IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA          )
                                  )
          v.                      )    1:07cr440 (JCC/TCB)
                                  )
FROILAN IGNACIO MANANSALA,         )
                                  )
     Petitioner.                  )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (the § 2255 Motion). [Dkt. 97.]

Also before the Court are three additional motions by Petitioner Frolian Ignacio Manansala: Motion for Leave to File a Motion to Amend, [Dkt. 121], Motion to Amend Pursuant to 28 U.S.C. § 2255, [Dkt. 122], and Motion for Leave to Amend and Supplement § 2255, [Dkt. 134].

For the following reasons, the Court will deny each of Petitioner's motions.

**I.  Background**

A.   Factual Background

On November 20, 2007, Petitioner was charged in a two-count indictment with conspiracy to distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841 (Count I), and possession of a firearm in

1

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count II).  On February 25, 2008, Petitioner pleaded guilty to both counts, which plea the Court accepted and found him guilty.  On May 9, 2008, this Court sentenced Petitioner to a sentence of 120 months imprisonment for Count I and 60 months imprisonment for Count II, and five years of supervised release.

B.   Procedural Background

On May 14, 2009, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (the § 2255 Motion).  [Dkt. 97.]  On August 21, 2009, the Government filed a brief in response, [Dkt. 102], and on October 13, 2009, Petitioner filed a brief in reply, [Dkt. 105].

The Court subsequently addressed other motions filed by Petitioner.  And by letter dated August 30, 2010, the Court directed Petitioner to notify the Court by September 9, 2010, as to whether he wished to pursue his § 2255 Motion.

On September 9, 2010, Petitioner filed a Motion for Leave to File a Motion to Amend, [Dkt. 121] (the Motion for Leave), and Motion to Amend Pursuant to 28 U.S.C. § 2255, [Dkt. 122] (the Motion to Amend).  On October 11, 2010, the Government responded to Petitioner's Motion to Amend.  [Dkt. 124.]  On November 23, 2010, Petitioner replied in support.  [Dkt. 129.]

2

On May 20, 2011, Petitioner filed a Motion for Leave to Amend and Supplement § 2255 (the Second Motion to Amend).  [Dkt. 134.]

On September 12, 2011, the Government submitted a Response in Opposition to Petitioner's motions.  [Dkt. 142.] Finally, on September 29, 2011, this Court held an evidentiary hearing on whether counsel at the time of his plea colloquy was ineffective in permitting Petitioner to plead guilty to Count II of the Indictment.  [Dkts. 135, 146.]

Petitioner's motions are before the Court.

## II.  Standard of Review

Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See Hill v. United States*, 368 U.S. 424, 426-27 (1962).  To prevail on a § 2255 Motion, the petitioner bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Petitioner argues that his sentence is otherwise subject to collateral attack because his counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).  Though Petitioner did not raise an ineffective assistance of counsel

3

claim on appeal, such claims may be the subject of a proper §
2255 petition despite a failure to seek direct review.  *See
United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991).

Under *Strickland v. Washington*, counsel's
representation is ineffective where it falls "below an objective
standard of reasonableness," creating "a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different."  466 U.S. at 694.  Thus,
a petitioner cannot succeed on his or her claim of ineffective
assistance of counsel unless he or she shows that (1) "in light
of all the circumstances, the identified acts or omissions [of
counsel] were outside the wide range of professionally competent
assistance."  *Id.* at 690 (defining ineffective assistance of
counsel as falling below an objective standard of reasonableness
and applying a strong presumption of competence and deference to
attorney judgment), and (2) "there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different."  *Id.*  "The petitioner
must show both deficient performance and prejudice; the two are
separate and distinct elements of an ineffective assistance
claim."  *Spencer v. Murray*, 18 F.3d 229, 232-33 (4th Cir. 1994).

With respect to the first prong of the *Strickland*
test, "[j]udicial scrutiny of counsel's performance must be
highly deferential."  *Strickland*, 466 U.S. at 689.  The Supreme

Court has elaborated on the deference due to counsel's

performance, explaining that:

> A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time.  Because of the
> difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the
> presumption that, under the circumstances, the challenged
> action might be considered sound trial strategy.

*Id.* (quotation marks and internal citations omitted).

With respect to the second prong requiring prejudice,

"a reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694.  "When a

defendant challenges a conviction entered after a guilty plea,

the 'prejudice' prong of the test is slightly modified." *Hooper*

*v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988).  A petitioner

who pleaded guilty "must show that there is a reasonable

probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Hill*

*v. Lockhart*, 474 U.S. 52, 59 (1985).  This is an objective test

that should be made "without regard for the 'idiosyncrasies of

the particular decisionmaker.'" *Id.* at 59-60.  Finally, under

either prong, this Court evaluates "the reasonableness of

counsel's performance . . . from counsel's perspective at the

time of the alleged error and in light of all the circumstances

. . . ."  *Hooper*, 845 F.2d at 476 (quoting *Kimmelman v.*

*Morrison*, 477 U.S. 365, 381 (1986)).

### III.  Analysis

Before the Court are four motions by Petitioner: the §

2255 Motion, Motion for Leave, Motion to Amend, and Second

Motion to Amend.  The Court will address each in turn.

A.   § 2255 Motion

Petitioner alleges three bases for his ineffective

assistance of counsel claim: first, that counsel erroneously

advised Petitioner about what warranted a conviction under both

18 U.S.C. § 924(c) and 21 U.S.C. § 846; second, that counsel

failed to conduct a meaningful investigation into the

Government's evidence and failed to interview available

witnesses whom Petitioner asserts were able to corroborate his

defense; and third, that counsel failed to move to suppress the

evidence that led to his being charged under § 924(c).  In

response, the Government argues that Petitioner has not set

forth a claim under *Strickland*, because "based on the

overwhelming evidence against [Petitioner]," counsel's advice to

Petitioner that he plead guilty was reasonable.  (Gov. Resp.

[Dkt. 102] at 6.)

The first two bases for ineffective assistance of

counsel are alleged in Petitioner's § 2255 Motion and the third

6

is made in the Second Motion to Amend.  This Court will consider
first the arguments in the § 2255 Motion.

### a. Counsel's Advice on what Warrants Conviction

Petitioner argues that counsel erroneously advised him
about what "was sufficient to warrant a conviction under both 21
U.S.C. § 846 and 18 U.S.C. § 924(c)."  (P. Mem. [Dkt. 98] at 1.)

Turning first to 18 U.S.C. § 924(c), Petitioner makes
two claims.  He claims that counsel "erroneously advised
Petitioner that the mere presence of methamphetamine and a
weapon in his home--without more--was sufficient to warrant a
conviction under [] 18 U.S.C. § 924(c)."  (P. Mem. at 1.)  He
also claims that "counsel's definition of the elements required
for conviction under 18 U.S.C. § 924(c) was [] faulty," as "[i]t
was counsel's position, and repeated in the statement of facts
supporting the Plea Agreement, that the sale of the rifle to an
undercover agent was in and of itself sufficient for conviction
under this statute."  (P. Mem. at 25.)  More specifically,
Petitioner alleges that counsel did not make him aware of the
"in furtherance of" requirement in 18 U.S.C. § 924(c).  (P. Mem.
at 26.)  He argues that the sale of the rifle and the presence
of the gun in his home do not meet that "in furtherance of"
requirement.  (P. Mem. at 26-27.)  Petitioner concludes that, as
a result, he was erroneously advised to enter into a plea
agreement.  (P. Mem. at 24.)

7

"To establish [a defendant's] guilt under 18 U.S.C. §
924(c), the evidence must show that [the defendant]: (i)
committed a drug trafficking crime; and (ii) possessed a firearm
in furtherance of that crime." *United States v. Nichols*, No.
08-4739, 2011 WL 1936068, at *2 (4th Cir. May 20, 2011) (citing
18 U.S.C. § 924(c)(1)(A)).  "The Fourth Circuit has held that
the phrase 'in furtherance of' . . . requires the Government to
'present evidence indicating that the possession of a firearm
furthered, advanced, or helped forward a drug trafficking
crime.'" *Gutierrez Sandoval v. United States*, No. 1:10cv559,
2010 WL 5300818, at *7 (E.D. Va. Dec. 17, 2010) (quoting *United
States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002)).  Whether a
firearm played such a role "is a question of fact." *United
States v. Carrington*, No. 10-4078, 2011 WL 573497, at *1 (4th
Cir. Feb. 16, 2011) (citing *Lomax*, 293 F.3d at 705).

There are "numerous ways in which a firearm might
further or advance drug trafficking." *Lomax*, 293 F.3d at 705.
The Fourth Circuit has stated,

> [f]or example, a gun could provide a defense against
> someone trying to steal drugs or drug profits, or it might
> lessen the chance that a robbery would even be attempted.
> Additionally, a gun might enable a drug trafficker to
> ensure that he collects during a drug deal.  And a gun
> could serve as protection in the event that a deal turns
> sour.  Or it might prevent a transaction from turning sour
> in the first place.  Furthermore, a firearm could help a
> drug trafficker defend his turf by deterring others from
> operating in the same area. *Id.*

8

Furthermore, "[m]any factors might lead a reasonable trier of fact to find a connection between a defendant's possession of a weapon and a drug trafficking crime." *Id.* These factors include: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.*

In this case, "[o]n or about June 26, 2007, in Fairfax County, Virginia, [Petitioner] and a co-conspirator sold a Bushmaster 5.56mm AR-15 rifle to an undercover law enforcement officer." (Statement of Facts [Dkt. 92] (SOF) ¶ 9.) This sale of the rifle occurred during the time period in which Petitioner was involved in the drug conspiracy, in or about 2005 through September 11, 2005. There are, however, no facts in the record establishing a connection between the rifle sale and the drug conspiracy, other than the temporal relation and that Petitioner partnered in the sale with a co-conspirator. Regarding the gun in Petitioner's home, Petitioner was arrested on September 11, 2007 and during the arrest, the government carried out a search of his home. (Vangellow Aff. [Dkt. 142-1] ¶ 9; P. Mem. at 10, 12.) During the search, the government found a loaded handgun, ammunition, and methamphetamine, all of which belonged to Mr.

9

Manansala by his own admissions." (Vangellow Aff. ¶ 9; P. Mem. at 10, 12.)

Turning first to Petitioner's argument that he was not aware of the "in furtherance of" requirement, Petitioner has put forth no evidence other than his own assertion that counsel did sufficiently advise him of it. Petitioner holds a Bachelor of Science in Engineering. (Evidentiary Hr'g Tr. [Dkt. 147] 60:13-17.) And, at his plea colloquy hearing, he answered "Yes, sir" to the question of whether he reads and writes in English fluently. (Plea Hr'g Tr. [Dkt. 143] 3:23-25.) Recognizing these facts, the Court emphasizes that Petitioner's plea agreement states, "Count Two charges the defendant with possession of a firearm *in furtherance of* a drug trafficking crime" (Plea Agreement [Dkt. 91] at 1) and the statement of facts states, "Manansala did knowingly and intentionally possess a firearm *in furtherance of* a drug trafficking crime" (SOF at 1) (emphasis added).

Furthermore, at his plea colloquy hearing, when asked whether he had "gone over the elements of the offense in Count 1 and Count 2 necessary for you to be proven guilty of those offenses," Petitioner answered yes. (Plea Hr'g Tr. at 5.) Petitioner's counsel at the time, Paul Vangellow, confirms this as he submits that he "explained to Mr. Manansala that the firearm in his possession must be utilized to further or advance

10

the conspiracy, but that courts have taken a very broad view of what actions satisfy this requirement and this 'in furtherance' requirement has been broadly construed in the government's favor by the U.S. Court of Appeals for the 4th Circuit." (Vangellow Aff. ¶ 7.)

Mr. Vangellow also states that he "explained to Mr. Manansala that the government could and would argue several theories for how the Defendant uses firearms in furtherance of the drug conspiracy, e.g., that he possessed the weapons to protect drugs he had in his home." (Vangellow Aff. ¶ 7.) Mr. Vangellow submits that additional charges against Mr. Manansala were being considered for his use of firearms and that Mr. Vangellow did not recommend calling the "prosecutor's bluff about adding other gun charges." (Vangellow Aff. ¶ 7; Evidentiary Hr'g Tr. 25:22-26:6.) He states that it was "an extraordinary gamble to go to trial given the quantity and quality of evidence against him." (Vangellow Aff. ¶ 7.) Finally, at the evidentiary hearing Petitioner conceded that before Mr. Vangellow was appointed counsel, another attorney explained the charges against him. (Evidentiary Hr'g Tr. 38:24-39:21; *see also* Vangellow Aff. ¶ 6.)

Having heard from both Mr. Vangellow and Petitioner at the evidentiary hearing, and having assessed their tenor and demeanor on the witness stand, this Court finds that Mr.

Vangellow was a more truthful witness.  In the case at hand, the clear weight of the evidence demonstrates that Petitioner had a full understanding of the elements and the nature of the charge.

Even if this Court were, however, to assume the veracity of Petitioner's statements, there is no question as to whether Counsel's advice to plead guilty to the § 924(c) charge was sound when considering the evidence on the whole.  It was. Not only was counsel aware of both the sale of the rifle with a coconspirator and the gun found in Petitioner's home, he also states:

> [f]rom my discussion with Mr. Manansala and the government I learned that . . . Mr. Manasala used other firearms in connection with the conspiracy.  He gave a firearm registered in his name to a co-conspirator.  He assisted another coconspirator in brokering the sale of an assault rifle to an undercover agent.  He also used a pistol to threaten and scare away an individual to whom he owed money for drugs by firing a shot at the ground near the individual outside of Mr. Manansala's residence.

(Vangellow Aff. ¶ 9.)  Thus, given the entirety of the evidence known to Mr. Vangellow at the time, any counsel given to Petitioner suggesting that he plead guilty to a § 924(c) charge would have been within the wide range of professionally competent assistance.

Turning next to 21 U.S.C. § 846, Petitioner argues that counsel informed him that "the mere presence of methamphetamine and a weapon in his home--without more--was

12

sufficient" to warrant a conviction.  (P. Mem. at 1.).  A

"conviction for conspiracy in violation of 21 U.S.C. § 846

requires the Government to prove beyond a reasonable doubt (1)

that there was an agreement between two or more persons to

unlawfully dispense, distribute or possess with intent to

distribute Schedule II controlled substances; (2) that the

defendant knew of the conspiracy; and (3) that the defendant

knowingly and voluntarily became a part of the conspiracy."

*United States v. Ereme*, Nos. 05-4263, 05-4237, 06-4575, 2007 WL

1046887, at *3 (4th Cir. Apr. 9, 2007).

        The Government asserts that it could have presented

testimony of informants and co-conspirators that Petitioner was

involved in the conspiracy.  (Gov. Resp. at 5.)  For example,

the Government asserts that among its evidence, it could show

that "[Petitioner] and a co-conspirator sold a Bushmaster 5.56mm

AR-15 to undercover agents, and government informants involved

in the conspiracy identified [Petitioner] as a co-conspirator

who regularly received multi-ounce shipments of methamphetamine

from a supplier, and then redistributed that methamphetamine

from [Petitioner's] house and elsewhere."  (Gov. Resp. at 5.)

Because of this evidence, even assuming, *arguendo*, the truth of

Petitioner's assertion that counsel advised him that the mere

presence of methamphetamine and a weapon in his home by itself

was sufficient for his conviction under the conspiracy charge,

13

counsel's advice for Petitioner to plead guilty was not objectively unreasonable.

### b. Counsel's Investigation

As to Petitioner's claim that counsel failed to conduct a proper investigation and failed to interview certain witnesses, "Strickland's objective reasonableness prong requires counsel to conduct appropriate factual and legal inquiries." *Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998).  And, Petitioner is correct that in the Fourth Circuit, in certain limited instances, an attorney's failure to contact and interview witness can render his or her representation in effective.  *See id.*  As the Fourth Circuit has noted, however, most of these limited instances "involve alibi witnesses or eyewitnesses critical to the determination of guilt."  *Id.* (collecting cases).

With respect to his co-conspirators, Petitioner claims that he asked counsel to speak with them.  (P. Mem. at 19.) Petitioner concedes, however, that only "[t]hose who were not cooperating with the Government--and thus unable to discuss the matter with counsel--would be able to confirm the fact of Petitioner's innocence."  (P. Mem. at 18.)  It is not objectively unreasonable assistance for counsel to not interview witnesses that he *cannot* interview.  Moreover, Petitioner also provides no support for the assertion that he asked counsel to

speak with these witnesses or support for what any discussion
with them would have revealed.

      With respect to witnesses outside of the conspiracy,
Petitioner argues that counsel did not "speak with any of the
individuals unrelated to the [] case who were prepared to speak
on Petitioner's behalf at trial." (P. Mem. at 13.) Petitioner
does not identify the import of these witnesses, but for noting
that certain of Petitioner's co-church members "would testify
that [he] was not known to sell narcotics." (P. Mem. at 13.)
These would not have been alibi witnesses or other witnesses
critical to the determination of guilt. *Huffington*, 140 F.3d at
580.

      With respect to the Government witnesses, Petitioner
claims that a proper investigation would have revealed
inaccuracies in their statements. (P. Mem. at 19.) Petitioner
states that "any statement made by [the informants] that <u>could</u>
have been proven was invalidated." (P. Mem. at 19 (emphasis in
original).) Petitioner provides no support for this assertion.
More importantly, Petitioner concedes that among the witnesses'
"statements that remained," *i.e.*, statements not invalidated,
were "the claim that [the witnesses] had seen [Petitioner]
distribute methamphetamine for the previous year." (P. Mem. at
19.) Given the other evidence available to the Government,
these witnesses were not critical witnesses, and thus any

15

purported failure to interview or investigate them was not
objectively unreasonable.

*   *   *

For the reasons set forth above, the Court will deny
Petitioner's § 2255 Motion.

### B.   Additional Motions

Petitioner also filed a Motion for Leave to File a
Motion to Amend (the Motion for Leave) and two motions to amend
with this Court.  As an initial matter, the Court will deem the
Motion for Leave granted for purposes of this Memorandum Opinion
only.

### a.   First Motion to Amend

In his Motion to Amend Pursuant to 28 U.S.C. § 2255
(the Motion to Amend), Petitioner argues that the 60 month
consecutive sentenced imposed by this Court for Count II, for
his violation of 18 U.S.C. § 924(c), was improper.  (Mot. to
Amend [Dkt. 122] at 1-2.)  Specifically, Petitioner argues that
"where a ten year or higher mandatory minimum is sentence is
imposed [for one count], and an additional § 924(c) count is
also present, there is no mandatory requirement that the court
impose a five (5) year consecutive mandatory sentence for the §
924(c) charge."  (Mot. to Amend at 2.)  The Government, in
response, argues that "the Fourth Circuit [has] directly

16

rejected precisely this argument." (Gov. Resp. to Mot. to Amend [Dkt. 124] at 1.)

The Government is correct. In *United States v. Studifin*, 240 F.3d 415, 421 (4th Cir. 2001), the Fourth Circuit rejected the argument that 18 U.S.C. § 924(c)'s language that "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law" prohibited a court "from imposing § 924(c)'s mandatory minimum consecutive sentence where the defendant is subject to a higher mandatory minimum sentence pursuant to another provision of law." Thus, Petitioner's argument must fail and the Court will deny the Motion to Amend.

Petitioner correctly notes that the Sixth Circuit, in *United States v. Almany*, 598 F.3d 238, 242 (6th Cir. 2010), held that the district court erred in sentencing the defendant to both a five-year mandatory minimum under § 924(c) and a 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). Petitioner also correctly notes that the Supreme Court granted certiorari in that case. Since Petitioner's filing the Motion to Amend, however, the Supreme Court vacated the judgment of the Sixth Circuit and remanded the case for further consideration in light of *Abbott v. United States*, 131 S.Ct. 18 (2010). *United States v. Almany*, 131 S.Ct. 637 (2010). As noted in *United States v. Robinson*, 627 F.3d 941, 959 (4th Cir. 2010), in

17

*Abbott*, the Supreme Court "agreed with *Studifin*'s [] reading of the provision. *See Abbott*, 131 S.Ct. at 30 (quoting *Studifin*, 240 F.3d at 423). Because [the defendant in *Robinson*]'s greater mandatory minimum stems from the crack conspiracy rather than any § 924(c) firearm violation, he cannot benefit from § 924(c)'s "except" clause and was therefore properly [consecutively] sentenced." Accordingly, the Sixth Circuit's decision in *Almany* is of no help to Petitioner.

###### b.  Second Motion to Amend

In his Motion for Leave to Amend and Supplement § 2255 (the Second Motion to Amend), Petitioner argues that counsel was ineffective for failing to move to suppress the evidence that led to his being charged under § 924(c). (Second Mot. to Amend [Dkt. 134] at 3.) Specifically, Petitioner argues that the search warrant pursuant to which law enforcement officers searched his house "lacked any authority to search for a gun that was stored in a secure location" in his home, because the search warrant was unlawful and, thus, the evidence was illegally obtained.[1] (Second Mot. to Amend at 3.)

---

[1] By entering a guilty plea, Petitioner waived his right to raise independent claims of deprivation of constitutional rights that occurred prior to entry of the guilty plea, including claims of unlawful search and seizure based upon the Fourth Amendment. *See Tollett v. Henderson*, 411 U.S. 258 (1973). Petitioner, however, has framed his attack on the legality of the search and seizure not as a direct challenge to the event itself, but as one element that provided a basis for a motion to suppress. Only in that light can he argue the alleged deprivation of his constitutional rights.

When claiming ineffective assistance of counsel in the context of a guilty plea, a petitioner must show prejudice, *i.e.*, that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59. Here, Petitioner does not make this claim. Instead, Petitioner argues that "[h]ad counsel objected and filed suppression motion for the § 924(c) charge, the Petitioner would not have received the additional consecutive five years to the mandatory minimum of ten years he received." (Second Mot. to Amend at 4.) Thus, the Court will deny the Second Motion to Amend.

## IV.  Conclusion

For these reasons, the Court will deny each of Petitioner's motions.

An appropriate Order will issue.

 

/s/
_____

November 8, 2011                        James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE